Thank you, your honor. Good morning, your honors. May it please the court. My name is Jason Dick Stein. I represent the defendant appellant, Michael Joseph Murphy, and it is my intention to reserve four minutes for rebuttal. Our discussion this morning begins not with the beginning of the case, but rather with the end of the case, because the constitutional infirmities that arise in this case arose after the jury had been released to deliberate. Your honor, under United States v. Lopez... There was absolutely no stipulation here to a unanimous verdict. There was no stipulation here that all the impaneled jurors should stay impaneled, but that a non-unanimous verdict would be great. Now, that's Lopez. What the parties did here, everybody on the same page, knowing the same thing, or not knowing the same thing, as the case may be, said, hey, come on, we stipulate to removal of a juror, and that the verdict can then be given to 11 people, unanimously. Your honor, under United States v. Symington, the Symington court explained that in a situation where there is a known holdout juror... Your honor, in a situation where the numerical division of the jury is known, one may not engage in a non-unanimous verdict. One may not engage in actions that are going to be coercive on the jury. And one may not engage in, or I'm sorry, the court may not engage in actions that are coercive with respect to the jury. And the court may not engage in coercive activity, whether that coercive activity is motivated by stipulation or motivated by the court. In that case, the Ninth Circuit held that where a numerical division of the jury is known, providing an all-in charge is considered to be a coercive activity. And in a later case... Not before it. Correct, your honor. But in a later case, Sanders v. Lamarck, Sanders v. Lamarck explained that when you're looking at coercive activities, the ultimate in coercive activities is the dismissal of a juror under the circumstances before... What's coercive about it? If lawyers in front of you say, hey, judge, let the lady go. We want a jury of 11 people or, as the composer said, 11 orangutans. I mean, I can understand drawing a line at kangaroos because that would lead unseemly to have a kangaroo court. But orangutans, I mean, whatever. I mean, what's the problem? The problem is, your honor, that if they were merely dismissing one individual and how that individual was likely to vote was entirely unknown, then they'd be agreeing to an 11-person jury. But in this case, they absolutely knew that the jury was split 11-to-1. They knew that they were dismissing a holdout juror. As a matter of fact, if you look at the excerpts of record at page 30, Mr. McConville himself, the prosecutor, explains that it is abundantly apparent that the jury was split 11-to-1. And where you have a situation where the jury is split 11-to-1, you have the sort of situation that Lopez and Symington are attempting to preclude, and even Sanders versus Lamarck are attempting to preclude. The situation where, purposefully or not purposefully, the defendant is put in the position of waiving the unanimity of the jury by removing the person that is the holdout on the jury. In this particular case the defendant knows as much as everyone else does. The defendant may have thought, you know, he's going to roll the dice, and the holdout is the one that wants to convict. I would agree with you. If the court started the ball rolling, those are the cases you're talking about where you could argue it's like applying coercion. But this isn't the court's proposition. This is the proposition of the parties provided in stipulation. They all know the same thing. Why can't they decide to do it by removing that one juror? Let's take as a given they knew that juror was the holdout too. What precludes them from doing that? Your Honor, there's two responses to that. The first response is that, and I'm sorry for going back to U.S. versus Lopez, but Lopez makes it clear that you can't waive unanimity and that unanimity is a non-waivable privilege. It's one of the few. Your Honor, this is a situation that is tantamount to going with a non-unanimous jury. If you can stipulate to remove the holdout, then there really is no difference between removing the holdout and accepting the 11 to 1 decision. The other response, Your Honor, to your proposal that everyone had the same information and knew what was going on is, bear in mind the specific circumstances of this case. There was a senior defense attorney, Mr. Jim Henderson, who asked for release from the case when the jury began deliberations because he had to attend to a different matter in a different state. He stated on the record that everything is done except for taking the decision from the jury and therefore there was no problem in leaving behind the junior defense attorney. The junior defense attorney, Mr. O'Sullivan, admitted on the record he had never seen a situation like this. So when he finally realized that the issue was one of unanimity rather than the issue being the removal of a non-deliberating juror, at that moment he came back and asked for a mistrial. He finally realized that the jury was not, in fact, split by someone who wouldn't deliberate but rather was split by a holdout. Well, it was after the fact acquired knowledge. Well, it was after the fact acquired knowledge for the defense attorney. And for the U.S. attorney and for the district judge. Except for the fact that Mr. McConville stated on the record that it was abundantly clear that the jury was split 11 to 1. The prosecutor understood the situation and the judge, Judge Stotler, had an obligation to oversee the jury process under 23B. If we assume that 23B is applicable and there are at least two other courts that have said that in the context of jury unanimity, 23B is not available to remove the juror. And I can cite those two if you'd like. I'm sorry. Of what significance is it that this whole problem developed with the quote, who was left in charge while the senior lawyer was off attending a more significant business or whatever he was doing. From a strict legal standpoint, looking at this as a jury unanimity issue, it may not make any difference because the jury unanimity right is non-waivable. So whether he understood or didn't understand, it's still a non-waivable right. However, I think that it is important to provide the Ninth Circuit with a context for why this was allowed to go on and why this wasn't caught immediately. Why it was that he didn't immediately say, I can't enter into that stipulation in giving up jury unanimity. Because it appears from the record that he didn't realize until late in the game what the problem was. And I think that it's very unlikely in light of the fact that his argument was that this was an issue of fundamental fairness rather than bringing up the Sixth Amendment jury unanimity issue. I think it's very likely that he didn't understand the constitutional ramifications. This Court is allowed to review constitutional issues de novo and as a consequence can correct something that the defense attorney really didn't realize was in fact a constitutional issue. We have here an unusual set of facts. Unfortunately, this doesn't come up very often. But I'll go back and look at Lopez, which actually identified these two different potential routes and drew a distinction because the government there argued that appellant did not waive her right to unanimous jury but rather agreed to accept the unanimous verdict of attendance. A distinction which the Lopez Court doesn't dispute. We'll put it across the line. What the Lopez Court says is, no, that doesn't square with the facts of that case. What took place at trial, defense counsel offered to waive our right to a unanimous verdict. The jury arranges a body of 12 threats to liberations and returns a verdict of 10 guilty and 20 acquitted. And it's because of the way it played out that the Lopez decision says, nope, this is an attempt to waive the unanimous verdict and you can't do that. Nothing in Lopez says that if it had been the other way, which turns out to be the facts of our case, that that couldn't be waived. Your Honor, you're right that this is certainly a more subtle approach to the issue than Lopez was. However, I think that if we take the guidance in Symington, Symington explained that as long as there's any reasonable possibility that the juror was being dismissed based upon his or her position on the case, there's no way to waive the verdict. And if the verdict is based on the merits, then the lower court can't do it. But then the court can't initiate it. The court can't find just cause. But the Symington case already runs into that other distinction, because in Symington it was the judge that initiates. And here it's the parties that stipulate the dismissal of the juror. Well, there are two points, Your Honor, to make in response to that. The first is that even under a stipulated removal, under 23b-2, there are two options. One in which the stipulated removal is without cause, and one in which a stipulated removal is with cause, 23b-2b. Here we have stipulated removal that was clearly for cause. And in fact, in the record and also in the government's additions to the statute, there are two options. In addition to the excerpt of record, there is the text of the stipulation in which it states that the individual is being removed because the individual was not deliberative. So here we have a situation where it is, in fact, for cause. I don't see it. You're right. The rule states two variants. And the other variant states that it requires good cause, which the first variant doesn't. And the other variant, which requires good cause, is without a stipulation by the party. And what they had here was an agreement by the parties, let's do it this way. So the court has to approve the stipulation, but the good cause requirement applies only to the second, where the court can do it on its own. Why is this the second as opposed to the first, given the parties did stipulate? Your Honor, I believe the language of 23B2B is the stipulation where there is good cause. Well, it's actually B3. B2, stipulation for the smaller jury. At any time before the verdict, the parties may, with the court's approval, stipulate in writing that, A, the jury may consist of fewer than 12 persons. Sorry, isn't there an or B? Or B, a jury of fewer than 12 persons may return a verdict if the court finds it necessary to excuse a juror for good cause after the trial begins. Here we have the trial begins. Your Honor, this was certainly after the trial began. This was, in fact, after the trial had concluded. But there are lots of possibilities that arise. A juror gets sick, something happens, whatever. The district court says, fine, excuse the juror. And then the jury says, do you have a judgment, declare a mistrial, or get an agreement that the trial can proceed with a number of jurors remaining. That's what that's about. It's not about a freestanding stipulation, which is what this is about. But this wasn't entirely a freestanding stipulation. It was certainly a stipulation in a context. The context was that the attorneys had been told this individual was not deliberating. And the attorneys said, well, the attorneys have an option. Retry the case. Don't excuse the juror, and I'll roll the dice on them hanging. Either way, it's going to be a mistrial. Or roll the dice and get an acquittal. Except in a situation like this, where you have an 11-to-1 split, where the non-deliberator is clearly... Your Honor, the defense lawyer may have thought, you know what? I just have a good feeling throughout this entire trial. I really think I have got connection with this person. I didn't get rid of the one person that the government managed to sell. I may have an acquittal here. If not, what have I lost? The problem with that is that the right to a unanimous jury is the one right that can't be waived. I'm sorry, I shouldn't say it's not the one right, but it is a right that can't be waived. And if, in fact, he was rolling the dice because he understood and let's assume for the moment's arguendo that he did understand what was going on and he did understand that the so-called non-deliberator actually was a dissenter. If, in fact, that's the case, then this really is no different from a situation where they've agreed to a non-unanimous jury. Because whether you take the 11-to-1 split or you dismiss the one dissenter and take the other 11, you get the same result. In this case, in answer to Judge Reimer's question, do we know what the lawyer who essentially tried the case and who was off somewhere, what feeling that individual would have had about the vibrations going back and forth with the jury? Your Honor, we do know from the record and as you can see from the excerpts of record, that individual stated that he specifically was stipulating because of the understanding that this individual that the individual, the juror, was not deliberating. And as soon as information came in in form of a note from juror number five upon dismissal saying, I was deliberating, I was the holdout. As soon as he saw that, he realized that the basis for the stipulation was incorrect. Well, the note that came in was, a juror is not willing to deliberate, not open to any additional information. Now, this is during jury deliberation. And of course, the evidence had closed before the jury retired to deliberate. And then her opinion is firm and says it will not change. Now, what kind of a signal does that give to the lawyers involved? According to Mr. O'Sullivan, he felt that she was not, in fact, deliberating. And he stated on the record that he insisted that the stipulation say, this is a stipulation based on the fact that she is not deliberating. The moment that an additional note came back from the dismissed juror and the judge read that into the record, he realized that she, in fact, had been deliberating and he asked for a mistrial. And I should point out that when that note came in, it came in immediately before the verdict was actually read into the record. So at that point in time, the judge could actually take the dismissed juror's note and  use it to vitiate a verdict. We have a situation here where the holdout juror was dismissed from the jury. Because the holdout juror was the one who was dismissed, we have a constitutional issue insofar as it is tantamount. It is exactly the same thing as taking an 11-1 jury verdict. There's really no difference between taking the 11-1 jury verdict and dismissing the one and taking the remaining 11. That is the equivalent of taking a non-unanimous jury verdict and that is one of the few criminal rights that are non-waivable. Furthermore, under the Symington decision, if there's any reasonable possibility that the dismissal of the juror was founded upon, the impetus for it came from the juror's position on the merits, under Symington, you have to vacate the decision. You have to go back. That sort of a dismissal is not permissible. Thank you, Your Honors. I thank you for your time and ask that you vacate the matter below. Good morning, Your Honors. May it please the Court. Tom McConville from the U.S. Attorney's Office, representing the United States. I'm booming in voice today. Let me ask you the question I asked counsel for the other side on this. The note 3 said a juror is not willing to deliberate, not open to any additional information. And, of course, at this point the evidence was closed, the case was submitted, so I don't know what that means. And then the next sentence says her opinion is firm and says it will not change. Now, isn't that a very strong signal to both lawyers who entered into the stipulation and also to the district judge that we had a situation here where there was an 11-to-1 split on the merits of the case? Your Honor, I believe that's the information that was available to everyone were the notes that were presented by the jury. Prior to the note that came out after the juror was dismissed, that information was available to the district court and the parties involved. And in the context in which this note came out, you know, this is after I want to put it in the context so the Court can understand. I actually tried the case. So the jury got the case approximately Friday afternoon. No verdict. They deliberated. They were ordered to come back on a Tuesday. They came back on Tuesday morning and the first, around 10 o'clock in the morning, a note came out, first note that indicated that there was a problem with one of the jurors not considering evidence. Now, that was the first note. Note three. That was note number one. Note number one. That's a Tuesday morning. Note number one comes out. Okay. The jurors break for lunch. Next note comes out, note number two, which says we'd like to read back a testimony. Okay. So although the first note indicated that somebody wasn't considering evidence, the next note indicates that they want to read back a testimony. And the testimony that they requested read back was the testimony of two very significant witnesses. One was a man named Brian Peters, who sold these parts in question. I mean, the case was about counterfeit aircraft parts sold to the Air Force. Mr. Peters was the one who sold the parts to the defendant. And according to Mr. Peters, he said, I told the defendant that the parts were no good and that the military wouldn't use them. I encouraged the defendant to check with the military to see if they'd work. The defendant then called me back and said they're okay. So that was one part of the readback. The other part was the defendant who said, Mr. Peters never told me anything. Mr. Peters never said there was anything wrong with these parts. In fact, he said they were okay. So the readback related to very critical information. The deliberation, although the first note indicated that somebody wasn't considering evidence, the next note was, let's hear some more evidence. And so that readback began Tuesday afternoon, and it wasn't even concluded by the time the third note came out, which was on Wednesday morning. So on Wednesday morning, the next note comes out, which Your Honor read, which says the parties are not, the jurors not willing to deliberate and not open to any additional information. Well, in the context of, that comes on the heels of we're in the middle of a readback. So I don't know what information can be gleaned other than perhaps a natural process within the jury room that it's a little contentious. People want to get to a verdict. Issues are continuing on. So that's the context in which that note came out. But then the next sentence after what you just referred to a minute ago is her opinion is firm and says it will not change. Correct. May I interrupt just one second and ask the person on the other end of the telephone line please to mute the telephone because we can hear rustling of papers. Thank you very much. I'm sorry. Thank you. So I have a telephone here? We have a counsel on the telephone line. Oh. Oh. I'm sorry. I'm sorry. Well, the next sentence, her opinion is firm and says it will not change. Yes. Now isn't that a rather clear signal that we have a jury split on the merit suit? Your Honor, based on my experience as a trial lawyer, there's nothing ever clear about jury notes. And we all discern tea leaves when we try to figure out what it is the jury is trying to do when we get notes. We do our best to respond to them. This note does, Your Honor, it seems to indicate now that yes, there was probably a split and we don't know which way the split was. Armed with that information, it wasn't held just by the government. It wasn't held by the district court. It was held by all the parties. Armed with that information, that's when the parties enter into a stipulation before Judge Stotler ever took the bench. So that note was in the courtroom when we all showed up on Wednesday morning. We read the note and there was a discussion between the lawyers as to how to proceed with the note when Judge Stotler took the bench. We advised the judge, Your Honor, the parties have reached an agreement as to how to proceed with the notes about the non-deliberating juror. And that agreement was to remove the non-deliberating juror. And under 23B, what's Judge Stotler's obligation? And that's really the inquiry. Did Judge Stotler abuse her discretion in accepting the stipulation? And there was no request by anyone to interview the non-agreeing juror. Never came up. There's a lot of discussion outside of the record about what Mr. Henderson did or didn't do. But what's in the record is that before Mr. Henderson was excused, Judge Stotler told Mr. Murphy, the defendant, you can force him to stay here if you want. Because he's your lawyer and he's here in my court and I'm going to order him to stay if you want him to stay. Or you can let and he agreed to let him go. Now the other thing, remember the context in which this is arising, the first note that came out, came out on a Tuesday that said, one person's not deliberating. I'm paraphrasing. Then there was a recess overnight. And then we came back and got another note. Although it's not in the record on direct appeal, what may arise in the record later if we ever have a 2255 or an effective civil counsel claim is that Mr. Henderson and Mr. O'Sullivan were talking overnight about what to do with the record. And it's not relevant for purposes of this appeal, but I suggest that maybe if the record were amplified, we might see information like that. But Judge Stotler, the analysis is whether Judge Stotler abused her discretion in accepting this stipulation. And 23b, Your Honor, as you read, doesn't require the court to find cause. It requires the courts to do a limited inquiry. Kennedy, it does. It's a difficult rule to parse. And so it's got something for everybody. And 232 talks about stipulation for a smaller jury. And subpart b does speak of a jury of fewer than 12 persons may return a verdict if the court finds it necessary to excuse a juror for good cause after the trial begins. I'm still not sure that I can figure out the relationship between a and b. But good cause is in there under stipulation at one point. Yes. You're right, Your Honor. I overstated. But the part on which this stipulation arises is the parties may stipulate in writing that a jury may consist of fewer than 12 persons. And that's what happened here. And Judge, you know, the Ninth Circuit's clear. The obligation for Judge Stotler at that point is to make sure that what the defendant is doing is knowingly involuntary. And what did Judge Stotler do? She took the bench. She spoke to defense counsel. Said, you want to stipulate to the removal? And defense counsel says yes. And my client concurs. Judge Stotler asks the defendant, is this what you want to do? Yes. And you've talked to your lawyer about it and this is what you want to do? Yes. Judge Stotler then accepted the removal. So Judge Stotler acted reasonably. This is not an issue where she abused her discretion or even the more heightened standard of invited error. That's the context in which Judge Stotler was operating when she accepted the stipulation of the parties. And, you know, to point to things after the fact, to point to the jury note that came later, well, that jury note that came later from the dismissed juror doesn't affect whether the defendant at the time he stipulated knew what right he was giving up. And the right he was giving up was the right to a jury of 12. So whatever happens after the fact doesn't change the right the defendant was giving up at the time he gave it up. And there are Ninth Circuit cases which we cite in our brief which say once the defendant has given up a right to what the jury has constituted and waives one of the rights under Rule 23 or Rule 24 and then a changed circumstances arise afterward, the court doesn't have to go back and let those changed circumstances undo the stipulation, which is what the defense is seeking to do here. So in this context Judge Stoller acted reasonably. And what it really amounts to, as Judge Stoller said, is a case of buyer's remorse. You know, there was, I think the when the defendant perhaps held out the hope that it was 11 to 1 and that the one holdout was the one person who thought the defendant was guilty, that the defendant was willing to, you know, roll the dice. And it's just a case of buyer's remorse at this point. The analysis is whether Judge Stoller acted reasonably, and she did under the circumstances. So if the court has no additional questions. I don't think so. Thank you, Your Honor. Thank you, counsel.
judges: Gibson, Rymer, Clifton